ESTATE OF Minnie HALE, Deceased,
Robert V. Hale, Executor,
Plaintiff–Appellee,

v.

UNITED STATES of America,
Defendant–Appellant.

No. 88–5711.

United States Court of Appeals,
Sixth Circuit.

Argued March 28, 1989.

Decided June 7, 1989.

Robert E. Maclin, Charles R. Hembree (argued), Kincaid, Wilson, Schaeffer & Hambree, Lexington, Ky., for Estate of Minnie Hale, deceased; Robert V. Hale, Executor.

Louis DeFalaise, U.S. Atty., Lexington, Ky., Richard Farber, Edward J. Snyder, Michael J. Martineau, James H. Love (argued), U.S. Dept. of Justice, Tax Div. Appellate Section, Washington, D.C., Gary R. Allen, Acting Chief, William S. Rose, Jr., Asst. Atty. Gen., Dept. of Justice, Tax Div., Washington, D.C., for U.S.

Before MERRITT and NELSON, Circuit Judges; and LIVELY, Senior Circuit Judge.

LIVELY, Senior Circuit Judge.

This appeal concerns the timeliness of claims for refund of gift taxes that the government admits were overpaid. The district court found that under all the facts and circumstances the taxpayer filed a timely informal claim.

I.

Acting under a general power of attorney, Minnie Hale transferred property of her husband, George Hale, to herself. She then transferred portions of the same property as gifts to her son, his wife, and her

grandson. All transfers took place between September 18, 1970, and December 2, 1972, when Minnie Hale died. George Hale was declared incompetent on December 22, 1972, and a committee was appointed. George Hale's committee filed suit in state court against Minnie Hale's estate and the three transferees of property from Minnie Hale, seeking restoration to George Hale of all property transferred under the power of attorney.

While the action for restoration of the transferred property was pending in the state courts, the executor filed federal gift tax returns and a federal estate tax return for Minnie Hale's estate on August 9, 1973. The gift tax returns reflected taxes due of $30,502.77 for gifts made by Minnie Hale to the three transferees. The estate tax return reflected a gross estate tax due of $64,839.68. The executor claimed a credit against the estate tax liability of $30,-502.77, the amount shown as gift taxes due on property previously transferred but required to be included in the taxable estate. On August 7, 1973, the executor had sent a letter to the IRS seeking an abatement and waiver of interest, penalty or deficiency against the estate relating to the gift tax returns and an extension of time to pay gift taxes "until such time as a judicial determination is made with respect to the validity of such transfers." The executor's affidavit, attached to the letter, set forth in detail the facts surrounding the gifts and the state court action for restoration of the transferred property. Apparently this request was denied; the executor paid the gift taxes of $30,507.77 when he paid the balance of the estate tax on October 12, 1972.

On July 26, 1976, the Internal Revenue Service (IRS) sent Minnie Hale's executor a statutory notice of deficiency, claiming an additional estate tax of $46,166.75. On October 14, 1976, the estate filed a petition in the United States Tax Court seeking a redetermination of the deficiency asserted by the IRS and a redetermination of the estate tax shown on the August 9, 1973, estate tax return. The petition explained that ongoing state court proceedings, seeking restoration to George Hale of property transferred to Minnie Hale and from Minnie Hale to the three transferees, questioned the existence of a taxable estate.

On June 19, 1981, the state appellate court directed that all property transferred by Minnie Hale under the power of attorney be restored to the estate of George Hale, who had died during the pendency of the proceedings. On the basis of this ruling, the Tax Court determined that Minnie Hale had no taxable estate at her death. The Tax Court record was not filed in this case. However, the parties stipulated in the present action that the Tax Court "further found that Minnie Hale did not make any taxable gifts of securities as shown on the gift tax return for the quarter ended June 30, 1972, and was not subject to any gift tax liability on said securities." The bulk of Minnie Hale's transfers to her son and others was made in the quarter ended June 30, 1972.

The Tax Court entered its decision on July 15, 1982, finding that the entire estate tax paid by the executor was an overpayment. The decision did not provide for return of the $30,502.77 gift tax payment, which the executor had elected to credit against the total estate tax due. The parties in this action stipulated to the position of the IRS with respect to the gift tax credit; the gift tax credit was not refundable as an estate tax, and after disposition of the estate tax case, the amount of gift tax credit "must be considered solely as payment of gift tax." The Tax Court decision became final on October 13, 1982.

On July 30, 1982, the estate filed formal claims for refund on Revenue Forms 843 for all gift taxes paid in 1973. The IRS denied the claims for refund on the ground that they were untimely. Section 6511(a) of the Internal Revenue Code,[1] 26 U.S.C. § 6511(a), establishes a period of limitation for filing claims for refund. It provides in pertinent part:

---

1. The events in this case took place before enactment of the Tax Reform Act of 1986. All references are to the Internal Revenue Code of 1954.

Claim for credit or refund of an overpayment of any tax imposed by this title in respect of which tax the taxpayer is required to file a return shall be filed by the taxpayer within 3 years from the time the return was filed or 2 years from the time the tax was paid, whichever of such periods expires the later....

## II.

### A.

The executor of Minnie Hale's estate filed this action in the district court for refund of the overpayments of gift taxes. The government filed a motion to dismiss, or for summary judgment, stating that the court lacked jurisdiction because the estate had failed to file timely claims for refund. It relied on section 7422(a) of the Code, 26 U.S.C. § 7422(a), which provides, as pertinent here:

No suit or proceeding shall be maintained in any court for the recovery of any internal revenue tax alleged to have been erroneously or illegally assessed or collected ... until a claim for refund or credit has been duly filed with the Secretary, according to the provisions of law in that regard, and the regulations of the Secretary established in pursuance thereof.

The case was submitted on a stipulation of facts. In addition to facts heretofore recited, the stipulation and annexed exhibits revealed that the estate had consented in 1975 to an extension of time for the IRS to determine gift tax liability. A letter from the attorney for the estate confirmed his understanding that the estate would have until January 1, 1980, to make claims for refund of gift taxes. Further, on July 26, 1976, the IRS sent the executor a statutory notice of deficiency of gift taxes for periods not involved here. That notice also advised the executor that the IRS was considering the gift tax returns for three of the six quarters involved in this case, including the quarter ended June 30, 1972, and had tentatively determined that gift taxes had been overassessed. The IRS stated that it would not make overassessments until it had finally determined deficiencies, and advised the estate to file protective claims for refund of the gift taxes in issue.

### B.

The district court filed a memorandum opinion on May 23, 1988, denying the government's motion to dismiss or for summary judgment. The district court found two distinct bases for concluding that the estate had filed timely claims for refund.

First, the court found that the estate's claim on its estate tax return for credit of the gift taxes disclosed on its gift tax returns put the IRS on notice that the estate was seeking a gift tax refund. Second, after the IRS asserted an estate tax deficiency, the estate's suit in the Tax Court advised the IRS of the estate's position with respect to both estate and gift tax liability. The court found that it was clear from the pleadings that the estate would be entitled to a refund of all estate and gift taxes previously paid if the state courts found that none of the transfers pursuant to the power of attorney was lawful.

Immediately following the Tax Court's decision giving effect to the state court of appeals ruling, the estate filed formal claims for refund of the gift taxes in issue. The district court determined that the formal claims filed on July 30, 1982, "were not filed in strict compliance with the time limitation imposed by Section 6511(a)." Nevertheless, applying familiar case law, the court concluded:

The plaintiff's act of claiming a credit on the Estate Tax Return for $30,502.77 in gift taxes due and the plaintiff's act of filing an action in United States Tax Court were sufficient to informally notify the Internal Revenue Service that the plaintiff was asserting its right to these gift taxes.

Accordingly, the district court entered judgment directing the IRS to refund to the estate $30,502.77 plus interest.

## III.

### A.

On appeal the government contends that the election on the estate tax return of a

credit for gift taxes could not serve as informal notice to the IRS that the estate was seeking refund of an overpayment of gift taxes. The claim for credit on the estate tax return was made pursuant to section 2012 of the Code, 26 U.S.C. § 2012. That section allows a credit for gift taxes when the gift property is also required to be included in the taxable estate. It applies to situations where the correct amount of gift taxes has been paid, but a credit is permitted to avoid double taxation. The government argues that a claim for credit under section 2012 does not notify the IRS that the taxpayer claims the gift taxes have been overpaid.

The government also argues that the estate's institution of Tax Court proceedings could not qualify as informal notice of a claim for refund of gift taxes. The Tax Court case concerned the redetermination of estate taxes. It did not deal with the gift taxes. The Tax Court ordered the previously paid estate taxes to be refunded, but held that the $30,502.77 gift tax payments were not refundable as an estate tax. Furthermore, the government maintains, section 6511(a) requires an administrative claim for refund; a court action is not an acceptable substitute. The requirement of a timely claim for credit or refund ensures that the IRS will have an opportunity to consider the claim administratively and dispose of it without litigation.

### B.

The estate contends that the claim for credit on the estate tax return, together with documentation and information furnished the IRS, gave notice that liability for both estate and gift taxes depended upon the outcome of the state court litigation. The estate tax return with the claim for credit, together with information concerning the state court litigation that the estate furnished to the IRS, gave notice in August 1973, well within the limitations period of section 6511(a).

The estate also argues that when the IRS credited the gift tax payments to satisfy a portion of the estate tax liability, these payments were transformed into estate tax, "and remained as an estate tax until 1982" when the Tax Court decided no estate tax was due. At this point, the gift tax credit was part of the overpayment of estate tax. The Tax Court did not provide for return of the gift taxes as an estate tax overpayment, however, and the $30,502.77 payment "was recredited to gift tax." Section 7422(d) of the Code, 26 U.S.C. § 7422(d), provides that the credit of an overpayment of tax shall, "for the purpose of any suit for refund of such tax liability so satisfied, be deemed to be a payment in respect to such tax liability at the time such credit is allowed." Thus, the estate asserts, the gift taxes must be deemed paid in 1982 when the Tax Court decision became final, and the Forms 843 filed in 1982 constituted timely formal claims for refund of the gift taxes.

### IV.

The Supreme Court noted in *United States v. Kales,* 314 U.S. 186, 194, 62 S.Ct. 214, 218, 86 L.Ed. 132 (1941), that it has often held that informal claims for refund may suffice where formal defects have been remedied even after lapse of the statutory period for filing. In *Kales* the taxpayer filed a written protest of a jeopardy assessment that was later refunded following litigation. The issue in the case concerned the tax basis of stock later sold. The protest letter stated that if a previous determination of the value of the stock should be set aside or reopened, the taxpayer "would insist" that the value so determined was too low and that she should recover the taxes paid on the basis of that value. The letter also advised that the taxpayer "will insist" that the stock was greatly undervalued and the taxpayer "will claim the right to a refund." After conclusion of the litigation, which resulted in a judgment in favor of the taxpayer, she filed a formal claim for refund.

The Supreme Court held that the letter constituted a valid informal claim for refund:

> When respondent filed her letter, the time within which a claim for refund could be filed was about to expire, and

**1262**

the occurrence of the contingencies on which a recovery could be had by respondent remained uncertain. But the Commissioner could have been left in no doubt that she was setting forth her right to a refund in the event of a departmental revision of its 1919 valuation of her stock. Her letter was present notice that, if the department insisted upon changing its original decision as to the 1913 value, she asserted that the stock had been undervalued and in consequence of the undervaluation she had a "right to a refund of said [1919] tax to the extent of such excess."

*Id.* at 195, 62 S.Ct. at 219. Use of the future tense in stating the claim for refund was natural, and in fact required, by reason of the contingent nature of the claim. *Id.* at 195–96, 62 S.Ct. at 218–19. The Court held that any deficiencies in the informal claim were cured by the formal claim, even though it was filed beyond the limitations period, and allowed the refund.

The court discussed the requirements of an informal claim in *American Radiator & Standard Sanitary Corp. v. United States*, 318 F.2d 915, 162 Ct.Cl. 106 (1963). An informal claim must have "a written component ... and should adequately apprise the Internal Revenue Service that a refund is sought and for certain years." *Id.* at 920 (citations omitted). Further discussing these requirements, the court stated:

> It is not enough that the Service have in its possession information from which it might deduce that a taxpayer is entitled to, or might desire, a refund; nor is it sufficient that a claim involving the same ground has been filed for another year or by a different taxpayer....
> On the other hand, the writing should not be given a crabbed or literal reading, ignoring all the surrounding circumstances which give it body and content. The focus is on the claim as a whole, not merely the written component.

*Id.* (citations omitted). The only other "essential" is that the taxpayer make available "sufficient information as to the tax and the year to enable the Internal Revenue

Service to commence, if it wishes, an examination into the claim." *Id.*

■ A court required to determine whether an adequate informal claim has been filed should look at all the facts and surrounding circumstances. "However, the Internal Revenue Service is not required to weigh circumstantial evidence in order to determine whether a taxpayer is asking for a tax refund." *Barenfeld v. United States*, 442 F.2d 371, 375, 194 Ct.Cl. 903 (1971). It is "[o]nly when the facts and circumstances demonstrate that the [IRS] was on notice that a right was being asserted with respect to an overpayment of tax" that a court should find that a timely informal claim has been filed. *Furst v. United States*, 678 F.2d 147, 152, 230 Ct.Cl. 375 (1982). An informal claim should set forth the grounds upon which it is based. *Helis v. Usry*, 496 F.2d 1319, 1321 (5th Cir.1974). However, "the specific legal formulations of the[ ] claims need not be made." *American National Bank & Trust Co. v. United States*, 594 F.2d 1141, 1143 n. 1 (7th Cir.1979). An informal claim is adequate if it furnishes sufficient information to "allow the IRS to make a reasonable and intelligent investigation and evaluation of the taxpayer's claim." *Id.*

■ *Kales* makes clear that an informal claim for refund may be stated in the alternative. Nevertheless, an informal claim must advise the IRS that a refund will be sought if a given contingency occurs. It must not be ambiguous or contradictory as to what is actually claimed. In a case in which a taxpayer adequately detailed the facts upon which it claimed taxes had been wrongfully exacted, but based its claim for refund on a contingency, the court found that the taxpayer had not filed a timely informal claim when that contingency did not occur. *Sun Chemical Corp. v. United States*, 698 F.2d 1203, 1207 (Fed.Cir.), *cert. denied*, 464 U.S. 819, 104 S.Ct. 81, 78 L.Ed. 2d 91 (1983). The same conclusion was reached when an estate sent a series of letters to the IRS requesting information to enable it to determine independently whether it had overpaid its taxes. At no time did the estate advise the government that it believed it was entitled to a refund.

*D'Amelio v. United States,* 679 F.2d 313 (3d Cir.1982). The court found that while the letters gave notice that the estate might seek a refund at some future time, they did not give notice of an intent to do so. *Id.* at 315.

## V.

■ Applying the foregoing standards, requiring that an informal claim must set forth the grounds upon which it is based and notify the IRS of an intent to seek a refund, we conclude that the estate of Minnie Hale filed a timely informal claim for credit or refund. The election on the estate tax return to apply the gift taxes to offset a portion of the estate tax liability was a claim for credit. This election, standing alone, was not sufficient. As the government points out, the election was not based on a claim that there had been an overpayment of gift taxes. It merely required the application of duly paid gift taxes to reduce the amount of estate taxes. It was not clear at that time whether there had been an overpayment of gift taxes. However, the estate's letter of August 7, 1973, with its attached affidavit, clearly set forth the facts and the legal basis on which a claim would be made that the gift taxes were not owed, even though paid, in the event the transferred property should be ordered restored to George Hale. Thus, the estate gave written notice sufficient to alert the IRS to the circumstances upon which a claim for refund would be based and the accompanying documents adequately stated the legal basis of the claim. As in *Kales,* the determination of whether there had been an overpayment of taxes could only come after an issue integral to the claim was settled in unrelated litigation.

The remaining question is whether the estate sufficiently advised the IRS that it intended to seek a refund if the state court litigation should result in a holding that Minnie Hale had no property to give in 1973.

The August 7, 1973, letter sought an abatement of any interest, penalty or deficiency assessable against the estate with regard to the gift tax returns *and* an extension of time to pay the gift taxes shown on the returns "until such time as a judicial determination is made with respect to the validity of such transfers." The estate could not be certain that the taxes shown as due on the gift tax returns were actually due until the ownership of the gift property was settled. Ownership depended on the outcome of the state court litigation. If the IRS had granted the estate's request to defer payment of gift taxes until final determination of the validity of the transfers, there would have been no overpayment for which to seek a refund. The IRS was not misled. The gift tax deficiency notice referred specifically to three of the gift tax returns filed by the estate that reflected the gift taxes in issue here. Thus, the IRS undertook to process the returns administratively. Long before this notice issued the estate had notified the IRS of the litigation attacking the validity of Minnie Hale's transfers under the power of attorney. We believe the estate showed by its efforts to avoid an overpayment of gift taxes and its full explanation of the questions concerning the validity of the gifts that it would contest the government's right to retain the gift tax payments. Under all the circumstances, there could be no doubt that the estate would claim a refund in the event the state courts should hold the transfers invalid.

The estate consistently sought to avoid being taxed on property that Minnie Hale never lawfully owned and had no authority to give away. When the IRS asserted a deficiency of estate tax, the estate promptly filed a petition in the Tax Court, seeking to have the deficiency redetermined *and* requesting a redetermination of the estate tax as reported on the return. The basis for the latter request was that the state court litigation raised the claim that none of the property transferred pursuant to the power of attorney was actually owned by Minnie Hale. If the IRS had asserted a gift tax deficiency with respect to the gift tax returns in issue, the estate could have sought a redetermination by the Tax Court of that deficiency as well. Rather than claiming deficiencies with respect to those returns, however, the IRS advised the executor on July 26, 1976, that it had tentatively determined overassessments. Thus, at

that time it appeared the IRS was processing the gift tax returns administratively and had tentatively concluded that the estate had overpaid the gift taxes. Since no deficiency had been asserted concerning the gift tax returns in question, the estate had no ground for petitioning the Tax Court for review. The IRS did not conclude the issues with respect to the gift taxes prior to the Tax Court's decision determining that Minnie Hale had no taxable estate. It could have then determined the gift tax issues administratively and avoided this litigation.

The Supreme Court stated in *Angelus Milling Co. v. Commissioner of Internal Revenue*, 325 U.S. 293, 297, 65 S.Ct. 1162, 1164, 89 L.Ed. 1619 (1945): "It is not enough that in some roundabout way the facts supporting the claim may have reached him. The Commissioner's attention should have been focused on the merits of the particular dispute." We believe the Commissioner's attention was so focused in this case. Beginning with the August 7, 1973, letter, and continuing through the Tax Court litigation to which the Commissioner was a party, the IRS was made aware of the fact that the estate filed gift and estate tax returns on the basis of property transfers that were under attack in the state courts. The estate sought to be relieved of the duty to pay the gift taxes until the issue of legality of the transfers could be settled. In the state court litigation it was defending the transfers as valid. If the estate had won in the state courts, the estate would have had no basis to claim refunds. However, the IRS was on notice that if the estate lost the state court case, there would be no gift tax or estate tax liability. In fact, the government stipulated that neither estate tax nor gift taxes were owed after that litigation concluded and the Tax Court entered its judgment. As with the taxpayer in *Kales*, it was sufficient for the estate to advise the IRS of the contingency and of what the estate's position would be if that contingency occurred.

The court stated in *American Radiator*, 318 F.2d at 920, "The focus is on the claim as a whole, not merely the written component." Considering the various requests made by the estate, and its dilemma as set forth in detailed written submissions, we feel that the estate adequately informed the IRS of its intention to seek a refund of gift taxes as well as estate tax if the state court litigation resulted in a holding that Minnie Hale's transfers were unlawful. Having made a timely informal claim, the estate was not required to file a protective formal claim as suggested by the IRS. The formal claim filed in July 1982 was timely.

It is not necessary to reach the estate's second argument. We do not have the Tax Court record before us and cannot determine whether the IRS ever actually treated the gift tax credit as a partial payment of the estate tax. Unless this was done, the gift tax payment remained what it was when $30,502.77 was remitted on October 12, 1973. There would be no "recrediting" that would be deemed payment as of July 15, 1982, pursuant to section 7422(d).

The judgment of the district court is affirmed.