**BCS FINANCIAL CORPORATION, et al., Plaintiffs–Appellants,**

v.

**UNITED STATES of America, Defendant–Appellee.**

No. 96–3199.

United States Court of Appeals, Seventh Circuit.

Argued April 3, 1997.

Decided June 25, 1997.

Harvey M. Silets (argued), Stewart T. Kusper, Katten, Muchin & Zavis, Chicago, IL, for Plaintiffs–Appellants.

Gilbert S. Rothenberg, Sarah K. Knutson, Thomas J. Sawyer (argued), Department of Justice, Tax Division, Appellate Section, Washington, DC, Thomas P. Walsh, Office of the United States Attorney, Civil Division, Chicago, IL, for Defendant–Appellee.

Before POSNER, Chief Judge, WOOD, Jr. and RIPPLE, Circuit Judges.

POSNER, Chief Judge.

The district court dismissed this suit for a refund of federal income tax because the taxpayer had failed to file a timely claim with the Internal Revenue Service. See 930 F.Supp. 1273 (N.D.Ill.1996). The taxpayer contends that it filed an "informal claim" that under Treasury regulations and judicial precedent satisfies the requirement that the taxpayer file a timely claim for a refund as a prerequisite to suing for the refund, 26 U.S.C. §§ 6511(a), 7422(a), provided that the informal claim is perfected by the later filing of a formal one. Resolution of the appeal requires us to consider the scope of the "informal claim" doctrine.

The plaintiffs, affiliated insurance companies that file a joint return and that the parties refer to as "BCS," entered into a contract with another insurance company in 1981. The contract granted to BCS, for three years, certain rights in the other company's insurance policies in exchange· for "ceding commissions," on which see *Colonial American Life Ins. Co. v. Commissioner*, 491 U.S. 244, 246–47, 109 S.Ct. 2408, 2411, 105 L.Ed.2d 199 (1989). Actually there were several contracts, and one ceded rights for five rather than three years, but these details are not material to our analysis.

BCS deducted the commissions in their entirety on its 1981 return. An IRS agent named Peterson audited the return and told BCS it would have to spread the deduction over the three-year life of the contract. The audit was conducted shortly before September 16, 1985, which was the date on which BCS, having received an extension of time within which to file its return for 1984, filed it. The return claimed no deduction for the commissions because BCS considered itself entitled to deduct them in full on its 1981 return.

Peterson completed the audit and gave BCS a copy of the audit report (dated September 26, 1985) that he had made for his superiors, repeating what he had told the company. BCS appealed to the IRS's appeals office. In a "report transmittal" to the appeals office that BCS was not shown, Peterson stated that because BCS's contract with the other insurer had terminated in 1984, "any costs not previously amortized would be allowable as a current deduction," that is, in 1984.

When the case landed in the appeals office, the appeals officer assigned to the case and representatives of BCS began discussing the possibility of settling the dispute. Settlement negotiations dragged on for years. Not until March of 1988 did a settlement become final. The settlement was generally favorable to BCS, permitting it to deduct 70 percent of the commissions on its 1981 return. But 70 percent is not 100 percent; the settlement required that the other 30 percent be spread over the life of the contract, implying that a portion of the commissions could be deducted only in 1984. But in its 1984 return, as we said, BCS claimed no deduction for them. None of the settlement documents, though they include a claim by BCS for a refund relating to an earlier year (1982), contains a claim for a refund for 1984, and none of the IRS agents involved in the settlement negotiations advised BCS's representatives that it was entitled to a refund for 1984. Not until June 20, 1989, some fifteen months after the settlement had become final—and almost four years after BCS had filed its 1984 return—did BCS file a claim for a refund of the more than $800,000 in federal income tax that it would not have paid on that return had it deducted in 1984 the por-

tion of the commissions allocable to that year under the settlement. While acknowledging BCS's legal entitlement to the deduction, the IRS rejected the refund claim as untimely, and this suit ensued.

The Internal Revenue Code provides that no suit for a tax refund may be maintained until a claim for a refund has been filed with the IRS in accordance with the applicable Treasury regulations. 26 U.S.C. § 7422(a). The Code further provides that the claim must be filed (with an immaterial exception) no later than three years after the filing of the return pursuant to which the taxes were paid that the taxpayer is trying to get back. 26 U.S.C. § 6511(a). A Treasury regulation requires that the claim set forth its grounds "in detail," along with "facts sufficient to apprise the [IRS] of the [claim's] exact basis," and that "the statement of the grounds and facts ... be verified." 26 C.F.R. § 301.6402–2(b)(1). The regulation goes on to provide that "a claim which does not comply with this paragraph will not be considered for any purpose as a claim for refund." Despite this last sentence the courts have, with the IRS's reluctant acquiescence, occasionally allowed a "claim" that does not satisfy all the requirements of the regulation to arrest the running of the three-year period. *Commissioner v. Lundy,* —— U.S. ——, ——, 116 S.Ct. 647, 655, 133 L.Ed.2d 611 (1996); *United States v. Kales,* 314 U.S. 186, 194, 62 S.Ct. 214, 218, 86 L.Ed. 132 (1941); *United States v. Commercial National Bank,* 874 F.2d 1165, 1170–71 (7th Cir.1989); *Martin v. United States,* 833 F.2d 655, 659 (7th Cir.1987); *United States v. Forma,* 42 F.3d 759, 766–67 (2d Cir.1994); *Beckwith Realty, Inc. v. United States,* 896 F.2d 860, 863–64 (4th Cir.1990); 4 Boris I. Bittker & Lawrence Lokken, *Federal Taxation of Income, Estates and Gifts* para. 112.5.2, pp. 112–99 to 112–100 (2d ed.1992); Michael I. Saltzman, *IRS Practice and Procedure* para. 11.08[2] (2d student ed.1991). It is on this "informal claim" doctrine that BCS pitches its appeal.

■ When a statute of limitations establishes a deadline for filing a suit in court as distinct from an administrative claim, a technical defect in the pleading that commences the suit and by doing so arrests the running

of the statute of limitations is unlikely to be fatal. A complaint afflicted with merely formal defects can ordinarily be amended to correct them with relation back to the date of the original filing of the suit. Fed.R.Civ.P. 15(c); *Woods v. Indiana University–Purdue University,* 996 F.2d 880, 884 (7th Cir.1993); 6A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 1497, p. 74 (2d ed.1990); cf. *In re Wilkens,* 731 F.2d 462, 464–65 (7th Cir.1984) (per curiam). Neither the tax code nor the Treasury regulations make any similar provision for claims for a refund. One office of the judge-made informal-claim doctrine is to plug this gap by excusing harmless noncompliance with the formalities prescribed for refund claims by the Treasury regulation that we quoted. *United States v. Memphis Cotton Oil Co.,* 288 U.S. 62, 66–70, 53 S.Ct. 278, 279–81, 77 L.Ed. 619 (1933); *United States v. Kales, supra,* 314 U.S. at 194, 62 S.Ct. at 218. Suppose that on the last day before the three years is up the taxpayer files a claim for a refund complete except for the omission of his signature. Two days later the taxpayer discovers and repairs the omission. It would be absurd rigorism even by the notably unforgiving standards of federal tax law (see, e.g., *United States v. Brockamp,* —— U.S. ——, ——, 117 S.Ct. 849, 852, 136 L.Ed.2d 818 (1997); but see *Prussner v. United States,* 896 F.2d 218 (7th Cir.1990) (en banc)) to make the taxpayer's utterly harmless mistake a basis for forfeiting a claim conceded to be substantively valid.

■ But so construed the informal-claim doctrine cannot help BCS. For the company did not file within the statutory three-year period a claim for a refund that was deficient merely in one or two of the technical requirements imposed by the Treasury regulation. It filed nothing except a set of claims, incident to the settlement, that did not mention 1984. A reader of the settlement papers might well infer that BCS would be able to claim a refund for that year. But to claim a refund for 1981 is not to claim a refund for 1984, even if the logic underlying the 1981 claim would suggest to a person knowledgeable about tax law and the affairs of the

taxpayer that the taxpayer would also have a claim for 1984. "[I]t is insufficient for a taxpayer to argue that the IRS possessed information from which it could deduce that the taxpayer is entitled to or desires a refund." *Miller v. United States*, 949 F.2d 708, 712 (4th Cir.1991). Otherwise the three-year limitations period would be porous. A taxpayer who made one claim could ignore the limitations period with respect to any other claims that had a logical relation to that claim. Having in 1986 claimed a refund for a home office deduction for 1984, he could in 1997 file a claim for a similar refund for the years 1985 through 1987. "The Commissioner [of Internal Revenue] is not required to act as a detective and to search for clues as to whether the plaintiff might desire tax refunds for the years 1974, 1975, and 1976, solely because the plaintiff had filed claims for tax refunds for the years 1971, 1972, and 1973." *VDO–ARGO Instruments, Inc. v. United States*, 3 Cl.Ct. 359, 362 (1983), aff'd. without opinion, 738 F.2d 453 (Fed.Cir.1984). See also *Sun Chemical Corp. v. United States*, 218 Ct.Cl. 702 (1978) (per curiam). Even a detective might have been baffled in BCS's case, because by claiming a refund for 1984 BCS would have been reopening its return for that year for the IRS to claim deficiencies, Saltzman, *supra*, para. 11.06[1], and who knew what skeletons lay in the 1984 closet? No one could have *known* from the settlement papers, although one would have suspected, that BCS was going to seek a refund for 1984.

■ But we cannot stop with these observations, for there is more to the informal-claim doctrine than forgiveness of purely technical defects. The doctrine is also one of waiver. What counts as a claim is specified not in the Code itself but in the Treasury regulation; and courts say that the Treasury, through its delegate the IRS, can waive the regulation. *Tucker v. Alexander*, 275 U.S. 228, 231, 48 S.Ct. 45, 46, 72 L.Ed. 253 (1927); Saltzman, *supra*, para. 11.11.

This rationale is in considerable tension with the principle that while the executive branch can change an executive-branch regulation, it is bound by it until it is changed. *United States v. Nixon*, 418 U.S. 683, 696, 94 S.Ct. 3090, 3101–02, 41 L.Ed.2d 1039 (1974); 1 Kenneth Culp Davis & Richard J. Pierce, Jr., *Administrative Law Treatise* § 6.5 (3d ed.1994). And the doctrine itself, insofar as it goes beyond the forgiveness of purely formal deficiencies in the claim, is in tension with the Supreme Court's recent decision that judge-made doctrines for tolling statutes of limitations applicable to claims by federal taxpayers, though made presumptively available in suits against the government by *Irwin v. Department of Veterans Affairs*, 498 U.S. 89, 95–96, 111 S.Ct. 453, 457–58, 112 L.Ed.2d 435 (1990); see also *White v. Bentsen*, 31 F.3d 474 (7th Cir.1994), are inconsistent with the structure and policies of the tax code. *United States v. Brockamp, supra,* —— U.S. at ——, 117 S.Ct. at 852. Granted, the informal-claim doctrine does not toll a legislatively prescribed tax statute of limitations, or, what is very similar, *Doe v. Blue Cross & Blue Shield United*, 112 F.3d 869, 876 (7th Cir.1997); *Thomason v. Aetna Life Ins. Co.*, 9 F.3d 645, 647–48 and n. 3 (7th Cir.1993); *Glass v. United of Omaha Life Ins. Co.*, 33 F.3d 1341, 1347–48 (11th Cir. 1994), waive it. The statute of limitations for refund claims is three years. It can be waived (at least if it is done in writing) by the IRS, *United States v. National Steel Corp.*, 75 F.3d 1146, 1149 (7th Cir.1996); cf. 26 U.S.C. § 6532(a)(2), but not, we may assume in light of *Brockamp*, by misleading statements or conduct; that would be tolling, an extrastatutory defense to the statute of limitations. But that's not quite what is going on here. The question in an informal-claim case is when the "claim" was filed. The tax code does not say. Congress has left the question to be answered by the Treasury. Since the Treasury's regulation does not bear the stamp of a legislative design that would be thwarted by a doctrine of waiver—since it could be changed without congressional action—its application to a particular case can be waived. That at any rate is the theory, *Tucker v. Alexander, supra,* 275 U.S. at 231–32, 48 S.Ct. at 46; Saltzman, *supra,* para. 11.11, or rather the second of two theories, of the informal-claim doctrine; and it is not argued that *Brockamp* rejects or undermines it.

Waiver, however, differs by only a hair's breadth from estoppel, and estoppel against the government is disfavored especially when as here it results in an unauthorized expenditure of government monies. E.g., *Office of Personnel Management v. Richmond*, 496 U.S. 414, 434, 110 S.Ct. 2465, 2476–77, 110 L.Ed.2d 387 (1990). Yet the cases that use the informal-claim doctrine to enforce waivers of the Treasury regulation (rather than just to forgive purely formal omissions) use it, like estoppel, to prevent IRS agents from lulling taxpayers into missing the three-year deadline, as when by dawdling in an audit or settlement negotiations the agents conceal from the taxpayer until it is too late that he had a right that might have provided the basis for a refund. *United States v. Kales*, *supra*, 314 U.S. at 196–97, 62 S.Ct. at 218–19; *United States v. Memphis Cotton Oil Co.*, *supra*, 288 U.S. at 70–71, 53 S.Ct. at 281–82.

Despite the tensions between the informal-claim doctrine, when interpreted as a doctrine of waiver or estoppel rather than merely as one of forgiveness of technical deficiencies, and other principles of law, the Supreme Court has never retracted its approval of the doctrine, and we therefore consider ourselves bound to follow it. *Khan v. State Oil Co.*, 93 F.3d 1358, 1364 (7th Cir.1996), cert. granted, ── U.S. ──, 117 S.Ct. 941, 136 L.Ed.2d 831 (1997). We add that the government has not asked us to reject the doctrine (though it does ask us to narrow it, as we shall see), and that while there are statutory "mitigation" provisions that cover some of the same ground as the informal-claim doctrine, 26 U.S.C. §§ 1311–1314; *United States v. Dalm*, 494 U.S. 596, 610, 110 S.Ct. 1361, 1369, 108 L.Ed.2d 548 (1990); Saltzman, *supra*, para. 5.07, they are highly limited and neither available to the taxpayer here nor argued by the government to preempt the judge-made doctrine.

■ BCS filed its 1984 return in 1985, and, as there is no suggestion that the delay was blameworthy, the statute of limitations for filing a claim for a refund expired in 1988. Suppose the IRS had not completed its audit of BCS's 1981 return until 1990—five years after BCS had filed its 1984 return. On these assumptions, BCS would not have known that it had a claim for a refund in 1984 until the statute of limitations for filing such a claim had run. Could it file a conditional claim of refund before the completion of the audit and any ensuing settlement negotiations? It could, *United States v. Commercial National Bank*, *supra*, 874 F.2d at 1170, 1176; *Swietlik v. United States*, 779 F.2d 1306, 1307 (7th Cir.1985); *O'Brien v. United States*, 766 F.2d 1038, 1041 n. 3 (7th Cir.1985); Saltzman, *supra*, para. 11.08[3], but in what amount? BCS could not have known before its settlement with the IRS that it would have to amortize 30 percent of the commissions over the life of the contract. It could, however, have requested, and would certainly have received, an extension of the statute of limitations. *O'Brien v. United States*, *supra*, 766 F.2d at 1041 n. 3. But what is more important, BCS had plenty of time after the settlement became final in March of 1988 within which to file its claim for a refund. The statute of limitations did not expire until the middle of September 1988. And the settlement had actually been agreed upon between the IRS's appeals officer and the representatives of BCS in August of 1987 and signed by BCS in December 1987.

■ A large business firm represented by sophisticated lawyers and accountants, BCS should have had no difficulty filing a timely claim. The firm does not explain why it took more than a year to file the claim after the settlement became final. It is reduced to arguing that since the IRS knew by the time of the settlement in 1988 that the company was entitled to a tax refund for 1984—indeed, this was Agent Peterson's position as early as 1986—the essential purpose of requiring a claim for a refund, that of alerting the IRS to the fact that the taxpayer has overpaid his taxes, has been fulfilled. But it would be an extraordinary inroad into statutes of limitations to hold that the running of a limitations period stopped as soon as the defendant realized that he was a *potential* defendant. Suppose *B* carelessly knocks over *A*'s precious Ming vase, shattering it into a thousand pieces. *A* scowls but says nothing. *B* knows the value of the vase, knows that he was negligent in knocking it

over, and knows that *A* has a reputation for being litigious. So *B* has, within moments of the accident, a belief approaching certainty that *A* will sue him, and for how much. Does this mean that the statute of limitations for negligently damaging personal property, which let us say is three years, stops running five minutes after the accident, so that *A* can if he wishes wait ten years to file his suit? That is the implication of BCS's argument. No case goes so far; the outermost extreme of the informal-claim doctrine consists of cases in which the taxpayer made *some* communication to the IRS indicating an intention to seek a refund. *United States v. Commercial National Bank, supra*, 874 F.2d at 1167, 1174; *Estate of Hale v. United States*, 876 F.2d 1258, 1263 (6th Cir.1989).

The government urges us to hold that the doctrine is never satisfied when the only written evidence of a potential claim is an internal government document. This position cannot be sustained either. Suppose the taxpayer makes a detailed and unequivocal oral claim to an IRS agent who writes it down verbatim and without showing it to the taxpayer files it as a claim for a refund. That would be a strong case for the application of the doctrine. There is a written claim, it contains all the required information, and all that is missing is the taxpayer's signature. But we agree that it is a rare case in which the doctrine can be successfully invoked when the only document is internal to the government; and this is not that rare case, for there was no oral claim by the taxpayer.

Although federal tax law is dominated by an intricate web of highly detailed statutory provisions and Treasury regulations, there are some important judge-made doctrines of tax law, such as the "substance over form" doctrine that we have discussed in *Yosha v. Commissioner*, 861 F.2d 494, 497–99 (7th Cir.1988), and other cases. What is peculiar about the informal-claim doctrine is that it is a gloss on the text of a Treasury regulation, specifying the form and contents of a claim for a refund, which could easily (we should think) be amended to specify the circumstances of substantial compliance or excusable noncompliance in which a nonstandard claim would be deemed adequate. Then the judges could take a back seat, which is where they usually belong in tax law. Thanks in part to the high level of detail in Treasury regulations, the fraction of tax disputes that gives rise to litigation is remarkably small, yet justice is served. The Treasury Department may therefore wish to consider the possibility of specifying the circumstances in which an informal claim for a refund shall be deemed a valid claim (if subsequently perfected) under the statute.

AFFIRMED.