Kerry C. SPEERS, et al., Plaintiffs,

v.

The UNITED STATES, Defendant.

No. 96–298T.

United States Court of Federal Claims.

June 23, 1997.

Conrad D. Carnes, Riverside, CA, for plaintiffs.

Edward L. Froelich, Washington, DC, with whom were Assistant Attorney General Loreatta C. Argrett, Mildred L. Seidman, David Gustafson, of the U.S. Department of Justice, for defendant.

### *OPINION*

ROBINSON, Judge:

This case concerns plaintiffs' allegedly overpaid interest in the amount of $17,622.92 on delinquent employment taxes. Currently, the case is before the court on defendant's October 28, 1996 motion to dismiss plaintiffs' complaint pursuant to Rule 12(b)(1), (4) of the Rules of the United States Court of Federal Claims ("RCFC"). Plaintiffs filed an opposition on December 23, 1996, to which defendant replied on January 16, 1997. Plaintiffs filed two amended complaints by leave of the court on July 23, 1996, and April 24, 1997. Oral arguments were heard on March 24, 1997, in the National Courts Building, Washington, D.C. Finally, the parties filed a joint status report on May 22, 1997, in which they informed the court that they were continually unable to reach an accord on the issues in dispute. For the reasons set forth below, defendant's motion to dismiss is hereby granted.

### *Background*

Plaintiffs, Kerry C. Speers, Sr. and Kerry D. Speers, Jr., were partners in a business venture known as S & S Tool & Die ("S & S"), through which they operated a machine shop in Montclair, California. S & S incurred state employment taxes as well as Federal Insurance Contributions Act ("FICA") and Federal Unemployment Tax Act ("FUTA") employment tax liabilities for its operations in 1981–1983. *See* U.S.C. Tit. 26 ("I.R.C."), Chs. 21, 23. The State of California conducted a payroll audit of S & S, concluded that S & S had erroneously treated its employees as independent contractors, and issued a notice of assessment on February 24, 1984. S & S paid the amount of this assessment on March 19, 1984. During the time period at issue, S & S failed to file any state or federal payroll tax returns. Subsequently, the Internal Revenue Service ("I.R.S." or "agency") obtained a copy of the California audit report.

Throughout late 1985 and 1986, the I.R.S. attempted to contact plaintiffs numerous times to discuss the absent federal payroll tax returns. The I.R.S., however, was unsuccessful in its attempts. Then in October 1987, an I.R.S. agent interviewed Kerry C. Speers, Sr., and also concluded from this interview that S & S had hired employees rather than independent contractors. This

conclusion was fully consistent with the state's February 24, 1984 audit and assessment. The I.R.S. agent calculated the amount of federal employment taxes due and sent this determination to S & S' address in Montclair, California.

On May 2, 1991, the I.R.S. sent a letter to S & S' Montclair, California address proposing and explaining adjustments to S & S' Form 940 employment taxes for the years 1981–1983. S & S never responded to this proposed adjustment. Apparently, the business had been sold and the partners had moved to Oregon and Southern California. The I.R.S. thereupon assessed S & S for the unpaid employment taxes plus statutory additions in the amount of $90,550 and levied plaintiffs' bank account therefor. Subsequently, plaintiffs discussed the matter with the I.R.S. and reached a settlement as to the amount of delinquent taxes and penalties owed by S & S, i.e., $5,567.71 with penalties in the amount of $1,782.64. Plaintiffs paid this amount with $28,828 in interest.

In December 1995, plaintiffs filed 13 claims for tax refund with the I.R.S., in which they also requested that the I.R.S. abate the interest charged on the assessed employment taxes from 1981, 1982, and the first two calendar quarters of 1983. The I.R.S. disallowed these claims on February 5, 1996, stating that it had no authority to abate interest on delinquent employment taxes. On May 28, 1996, plaintiffs filed suit in this court and twice amended their original complaint pursuant to RCFC 15(a) in order to provide information required by RCFC 9(h)(6).

### Contentions of the Parties

Plaintiffs claim that the dispositive issue in this case is whether interest owed on unpaid FICA and FUTA taxes is computed as of the date the taxes are due or as of the date a taxpayer becomes aware of the tax liability. Embracing the latter interpretation of the I.R.C., plaintiffs assert an equitable claim against the United States in that the I.R.S. has collected interest on a tax, which the government "does not wish to collect," and

for which plaintiffs seek restitution. *Pls.' Opp'n* at 4. According to plaintiffs, interest for delinquent employment taxes was calculated applying "new math" to a "cryptographic" federal table using the "secret date" on which said "phoney," "ghost" taxes would have been due using the original $90,550 amount rather than the proper settlement amount of $5,567.71.[1] *Pls.' Opp'n* at 5–7. Plaintiffs further assert a legal claim, contending that defendant breached the Equal Protection Clause of the U.S. Constitution as well as the implied contract between each citizen and the government to calculate fairly and accurately the amount owed to the I.R.S. Plaintiffs also argue that the I.R.S. agent, who improperly calculated the interest owed, committed gross misconduct by negligently using the original $90,550 tax debt and did so to avoid professional damage to his career. *Pl.'s Compl.* ¶ 6. Finally, plaintiffs contend that the I.R.S. ultimately recalculated the interest owed and refunded plaintiffs a total of $7,610.42, which, argue plaintiffs, proves that the government does have the power to refund overpaid interest on employment taxes.

Defendant challenges plaintiffs' complaint on several bases. First, defendant argues that this court lacks subject matter jurisdiction over the complaint to the extent that plaintiffs' claims sound in tort. Second, defendant contends that plaintiffs have failed to state a claim upon which relief can be granted since the I.R.S. has no authority to abate interest assessed on employment taxes. Third, defendant claims that even if the I.R.S. had such authority with respect to employment taxes, the decision to abate is purely within the agency's discretion and is, therefore, a nonjusticiable issue not subject to judicial review.

### DISCUSSION

Under RCFC 12(b)(1), evaluation of a motion to dismiss for lack of jurisdiction is usually limited to the pleadings, and the uncontested facts alleged in the complaint are deemed to be true and construed in the light

---

1. The court is not amused by the cavalier and hyperbolic tone of plaintiffs' opposition to defen-dant's motion.

most favorable to the plaintiff. RCFC 12(b)(1); *See Cincinnati Elecs. Corp. v. United States,* 32 Fed. Cl. 496, 500 (1994); *Cupey Bajo Nursing Home, Inc. v. United States,* 23 Cl.Ct. 406, 411 (1991). When considering an RCFC 12(b)(4) motion to dismiss for failure to state a claim upon which relief can be granted, the factual allegations in the complaint are taken as true and all reasonable inferences are drawn in favor of the nonmoving party. *See* RCFC 12(b)(4); *Marshall v. United States,* 21 Cl.Ct. 497, 499 (1990); *Papasan v. Allain,* 478 U.S. 265, 283, 106 S.Ct. 2932, 2943, 92 L.Ed.2d 209 (1986) (discussing the analogous Federal Rule of Civil Procedure ("FRCP") 12(b)(6)). The court may not dismiss a complaint "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957).

 Despite these presumptions, however, plaintiffs who , would prevail in this court nonetheless bear the ultimate burden of establishing the court's jurisdiction over their claims. *Metzger, Shadyac & Schwartz v. United States,* 10 Cl.Ct. 107, 109 (1986). The jurisdiction of this court to entertain claims against the government and grant relief is limited by the extent to which the United States has unequivocally waived its sovereign immunity. *United States v. Testan,* 424 U.S. 392, 399, 96 S.Ct. 948, 953–54, 47 L.Ed.2d 114 (1976); *United States v. Sherwood,* 312 U.S. 584, 586, 61 S.Ct. 767, 769–70, 85 L.Ed. 1058 (1941); *Dynalectron Corp. v. United States,* 4 Cl.Ct. 424, 428 (1984). Consent to sue is premised on the Tucker Act, 28 U.S.C. § 1491, which provides that an action may be maintained in this court if and only if it is "founded either upon the Constitution or any Act of Congress, or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliq-

uidated damages in cases *not sounding in tort." Id.* § 1491(a)(1) (emphasis added).[2]

Initially, the court notes that, in making their contentions, plaintiffs fail to cite a single point of legal authority in support of their position. Rather, plaintiffs cite a meager amount of legal precedent that has virtually nothing to do with the case at bar. For example, plaintiffs misconstrue and improperly apply dicta found in an unrelated case decided by this court dealing with an entirely different set of facts and legal issues.

> In the case of *Anaheim Gardens v. United States,* 33 Federal Court of Claims 24 (1995), this Court said this: "The statute need not expressly provide relief in the Court of Federal Claims" referring to the enabling statute. This is both an obvious and welcome observation, and applies to the Internal Revenue Code.

*Pls.' Opp'n* at 6. Plaintiffs also improperly cite *Kerr–McGee Corp. v. United States,* 32 Fed. Cl. 43 (1994), dealing with the equitable jurisdiction of this court in Congressional reference cases in an attempt to establish jurisdiction over their equitable claims. As if plaintiffs' dearth of authority and miscitation of precedent were not enough, plaintiffs also misstate without citation the substance of the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2671, *et seq.,* referencing that legislation in a way that, if anything, strengthens defendant's position.

> Does this sort of magisterial mischief sound in tort? We consult the Federal Tort Claims Act, which provides:

> Does the inability of the Internal Revenue [S]ervice to "abate interest" deprive this Court of [j]urisdiction to determine whether Plaintiffs may recover for breach of the Constitutional accord of equal protection, or for the contract implied between each citizen and the government he faces to calculate fairly and accurately the amounts

---

**2.** The Tucker Act creates no substantive right of recovery, and unless there is a contract between the parties, jurisdiction exists only when predicated upon another money-mandating provision, whether statutory or regulatory, the violation of which gives rise to a claim for monies due or owing. *See United States v. Testan,* 424 U.S. 392, 398, 96 S.Ct. 948, 953, 47 L.Ed.2d 114 (1976);

*United States v. Connolly,* 716 F.2d 882, 885 (Fed.Cir.1983) *(en banc).* When a statute or regulation "can fairly be interpreted as mandating compensation by the Federal Government for the damages sustained," a plaintiff may be entitled to monetary relief *Testan,* 424 U.S. at 400, 96 S.Ct. at 954.

he owes, and to assess him only that which he does owe? *Pls.' Opp'n* at 6. The FTCA neither contains the above text nor discusses the Equal Protection Clause or implied contracts.

## I. This Court Lacks Jurisdiction Over Claims Sounding in Tort.

■ Plaintiffs' complaint alleges that personnel in the Department of the Treasury were guilty of gross misconduct because they "failed and *neglected* to prosecute the audit within a reasonable time against a perishable plaintiff" and "failed and refused to give the required notice of audit, *negligently* depriving the Petitioners of a reasonable opportunity to present evidence." *Pl.'s Compl.* ¶ 6 (emphasis added). It is not often that the court entertains a lawsuit by a taxpayer who claims the I.R.S. did not fulfill its auditing responsibilities aggressively enough. Plaintiffs' opposition to defendant's motion purports to "consult the Federal Tort Claim Act," *Pl.'s Opp'n* at 6, but cites no authority in support of plaintiffs' theory of recovery. Ultimately, it is beyond cavil that this court lacks jurisdiction over claims sounding in tort. 28 U.S.C. § 1491; *Morales v. United States*, 19 Cl.Ct. 342, 344 (1990); *Lewis v. United States*, 208 Ct.Cl. 969, 970 (1975).[3] Thus, to the extent plaintiffs' complaint outlines a tort claim, this court is wholly without jurisdiction pursuant to RCFC 12(b)(1).

## II. The I.R.S. Lacks Authority to Abate Interest on Employment Taxes.

■ The power of the I.R.S. to abate overpaid interest on delinquent taxes is very limited, and the I.R.C. does not extend that authority to encompass employment taxes. *See* 26 U.S.C. §§ 6211, 6212, 6404, 6651. Each of plaintiffs' claims for tax refund state that they request abatement of interest caused by I.R.S. errors and delays, which are provided for by I.R.C. § 6404, authorizing the I.R.S. to abate certain amounts assessed against taxpayers. Specifically, I.R.C. § 6404(e) authorizes the I.R.S. to abate interest attributable to errors and delays by the

agency. However, this section is limited to the overpayment of interest on only *two* types of tax liability, § 6211 and § 6212(a) tax deficiencies. Section 6404(e) provides:

(e) Assessments of interest attributable to errors and delays by Internal Revenue Service.-

(1) In general. In the case of any assessment of interest on-

(A) any deficiency attributable in whole or in part to any error or delay by an officer or employee of the Internal Revenue Service (acting in his official capacity) in performing a ministerial act, or

(B) any payment of any tax described in section 6212(a) to the extent that any error or delay in such payment is attributable to such officer or employee being erroneous or dilatory in performing a ministerial act,

the Secretary may abate the assessment of all or any part of such interest for any period. For all purposes of the preceding sentence, an error or delay shall be taken into account only if no significant aspect of such error or delay can be attributed to the taxpayer involved, and after the Internal Revenue Service has contacted the taxpayer in writing with respect to such deficiency or payment.

I.R.C. § 6404(e).

■ Section 6211 deficiencies are defined as excess amounts of taxes owing and unpaid for taxes imposed by I.R.C., subtitles A, B, and D, chapters 41–44, which address: income taxes; estate and gift taxes; occupational taxes; public charities; private foundations; black lung benefit trusts; qualified pension plans; and qualified investment entities. Similarly, § 6212(a) deficiencies refer to I.R.C., subtitles A, B, and D, chapters 41–44. Notably absent from either provision in I.R.C. § 6404(e) is the authorization to abate interest on the type of employment taxes here at issue, which are discussed in I.R.C.,

---

**3.** The exception to this rule is the case where Congress has specifically vested the U.S. Court of Federal Claims with jurisdiction over claims sounding in tort either by an act of Congress or by a Congressional reference. *See, e.g.,* 42 U.S.C. § 300aa–10 *et seq.;* 28 U.S.C. §§ 1492, 2509.

subtitle C.[4] This conclusion is supported by I.R.S. procedures as well as by courts interpreting such procedures. *See* Rev. Proc. 87–42, 1987–2 C.B. 589, § 2, ¶.02 ("Abatement of interest assessed or collected with respect to employment taxes or to excise taxes other than those imposed by chapters 41 through 45 is not authorized by section 6404(e)(1)."); *Baioni v. United States,* 71 A.F.T.R.2d (P–H) 93–1700, 1993 WL 213783 (W.D.Tenn. 1993) (relying on Rev. Proc. 87–42 to grant the government's motion to dismiss). The fundamental principle of statutory construction, *expressio unius est exclusio alterius,* applies. There is a firm presumption that everything in the I.R.C. was intentionally included for a reason and everything not in the code was likewise excluded for a reason—the expression of one thing is the exclusion of another. *Black's Law Dictionary* 299 (Abridged 5th ed.1983). This court cannot ignore the exclusion of the relief requested by plaintiffs from the section where the abatement of overpaid interest on taxes attributable to I.R.S. errors and delays is unequivocally set forth with respect to almost every other subtitle of the I.R.C.

■ It is well-established that the payment of money from the U.S. Treasury must be authorized by statute. *Office of Personnel Mgmt. v. Richmond ("OPM"),* 496 U.S. 414, 424, 110 S.Ct. 2465, 2471, 110 L.Ed.2d 387 (1990). The Appropriations Clause gives Congress the power to decide under what circumstances money can be paid out of Treasury funds. *See* U.S. Const. art. I, § 9, cl. 7. Even allegedly erroneous oral or written advice received from an agency official, which results in loss or financial injury, does not entitle a plaintiff to monies not otherwise permitted by law, for payment of such money from the U.S. Treasury must still be authorized by Congress. *OPM,* 496 U.S. at 417–18, 424, 434, 110 S.Ct. at 2467–68, 2471, 2476–77. Thus, in the absence of clear Congressional authority, the other branches of government cannot effect payment of Treasury funds. *OPM,* 496 U.S. at 426, 110 S.Ct. at

2472. I.R.C. § 6404(e) is silent as to the type of abatement or refund of interest on employment taxes sought here by plaintiffs. Put simply, the I.R.C. provides no basis upon which the requested relief can be granted in this case. Therefore, neither the I.R.S. nor this court has the authority to award such a refund, and plaintiffs' complaint fails to state a claim upon which relief can be granted pursuant to RCFC 12(b)(4).

### III. *The I.R.S.' Discretionary Decisions Are Not Subject to Judicial Review.*

■ Assuming *arguendo* that the I.R.S. in its discretion is not forbidden from providing the relief sought in the present case, this court would nonetheless be powerless to disturb the agency's decision. To the extent the abatement or refund of overpaid interest on FICA and FUTA taxes is arguably allowable because it is not expressly proscribed by the I.R.C., the decision to do so is permissive rather than mandatory and is solely within the agency's discretion. As such, the I.R.S.' unlikely decision to abate interest on employment taxes is a nonjusticiable agency determination unfettered by agency directives, guidelines, or administrative procedures and is not subject to judicial review. *Brahms v. United States,* 18 Cl.Ct. 471, 475–76 (1989) (expressing the majority view of the U.S. Courts of Appeals for the 2d, 7th, 9th, 10th and 11th Circuits that "a court cannot review I.R.S.'s refusal to refund interest because I.R.S.'s action under 26 U.S.C. § 6404(e) is purely discretionary."); *accord Argabright v. United States,* 35 F.3d 472 (9th Cir.1994); *Bax v. Commissioner of I.R.S.,* 13 F.3d 54 (2d Cir.1993) (citing *Brahms* with approval). Consequently, plaintiffs' complaint again fails to state a claim upon which relief can be granted pursuant to RCFC 12(b)(4).

### IV. *Plaintiffs Have Failed to Establish a Violation of the Equal Protection Clause or Breach of an Implied Contract.*

■ Plaintiffs also attempt to establish jurisdiction by presenting their case as one

---

4. Pub.L. No. 104–168 (Taxpayer Bill of Rights 2) was signed into law on July 7, 1996, and amended § 6404. Even if these amendments were availing to plaintiffs, they were intended to be only proactive. The effective date for the amend-

ments relating to the abatement of interest on tax liability applies to "taxable years beginning after the date of enactment." Title III, § 301. These amendments, therefore, are irrelevant to the case at bar.

implicating the Equal Protection Clause and an implied contract between the federal government and all taxpayers. *Pl.'s Opp'n* at 6–7. Apparently, plaintiffs are attempting to invoke the Equal Protection Clause and the evasive, philosophical notion of a social contract to establish a jurisdictional predicate pursuant to 28 U.S.C. § 1491. While novel, this theory of jurisdiction over an implied contract is utterly without merit. Plaintiffs cite no factual basis or legal authority in support of the origin or recognition of this chimeric contract theory. Plaintiffs have pled no facts that can remotely be construed to prove formation of an implied-in-fact contract with the government, the requirements of which mirror the requirements of an express contract but with differing natures of proof. *Russell Corp. v. United States,* 210 Ct.Cl. 596, 609, 537 F.2d 474 (1976), *cert denied,* 429 U.S. 1073, 97 S.Ct. 811, 50 L.Ed.2d 791 (1977). The requirements of an implied-in-fact government contract are: (1) an unambiguous offer; (2) an unambiguous acceptance; (3) manifestation of mutual intent to be contractually bound; (4) consideration; and (5) authority of the contracting officer or agent to so bind the United States. *City of El Centro v. United States,* 922 F.2d 816, 820 (Fed.Cir.1990); *H.F. Allen Orchards v. United States,* 749 F.2d 1571, 1575 (Fed. Cir.1984); *National Micrographics Sys., Inc. v. United States,* 38 Fed.Cl. 46, 49–50 (1997).

Indeed, this court and the U.S. Court of Appeals for the Federal Circuit have soundly rejected all such attempts to invoke defective jurisdiction with assertions of Equal Protection violations or past breaches of contracts of elusive origin. In *National Leased Housing Ass'n v. United States ("NLHA"),* 105 F.3d 1423, 1428 (1997), the plaintiffs asserted violation of the Equal Protection Clause in an attempt to establish Tucker Act jurisdiction. In affirming this court's rejection of those plaintiffs' arguments, the Federal Circuit reasoned:

> Realizing that the Court of Federal Claims cannot adjudicate these claims directly, plaintiffs couched their claims as one of breach of contract rather than a violation of these clauses and statutes directly.... Further, the court summarily dismissed an equal protection challenge on the ground that selective enforcement does not amount to impermissible discrimination.

*Id.* at 1428 (citing with approval *NLHA,* 24 Cl.Ct. 647 (1991)) and affirming *NLHA,* 32 Fed. Cl. 762 (1995)); *see also Faust v. United States,* 101 F.3d 675, 677 (1996) (affirming this court's outright rejection of a taxpayer's claim purportedly based on Equal Protection violations and implied contracts of unspecified origin). In the case at bar, the I.R.S. did not selectively enforce the provisions of the I.R.C. It merely enforced them. It defies reason to consider how this agency action could constitute the breach of an implied contract within the requirements of RCFC 12(b)(4).

### CONCLUSION

Therefore, after careful consideration of the oral arguments, exhibits, briefs, and the applicable law, the court grants defendant's motion. The Clerk of the Court shall dismiss plaintiffs' claims sounding in tort under RCFC 12(b)(1) for lack of jurisdiction and all remaining claims for failure to state a claim under RCFC 12(b)(4).

**IT IS SO ORDERED.**