# Waiver of Statutes of Limitations in Connection with Claims Against the Department of Agriculture

The Supreme Court's decision in *Irwin v. Department of Veterans Affairs* made no alteration in the fundamental rules governing waivers of sovereign immunity in actions against the United States *Irwin* and the cases following it therefore provide no support for the novel conclusion that the executive branch has the discretion to dispense with a congressionally mandated statute of limitations in litigation or the compromise of claims. Unless Congress provides to the contrary, adherence to the relevant statute of limitations remains a strict and non-waivable condition on suits against the federal government.

Enactment of legislation authorizing the payment of claims barred by the statute of limitations under the Equal Credit Opportunity Act is the necessary and constitutionally appropriate means of satisfying such claims.

June 18, 1998

MEMORANDUM OPINION FOR THE ASSOCIATE ATTORNEY GENERAL

This memorandum supplements advice that we provided to you previously in connection with the statute of limitations under the Equal Credit Opportunity Act ("ECOA"), 15 U.S.C. §§ 1691–1691f (1994). *See generally Statute of Limitations and Settlement of Equal Credit Opportunity Act Discrimination Claims Against the Department of Agriculture*, 22 Op. O.L.C. 11 (1998) ("ECOA Opinion").[1] The issues presented here as well as in our earlier ECOA Opinion arise in the context of pending[2] and potential claims against the Department of Agriculture ("USDA") based upon alleged racial discrimination during the period of January 1983 to February 1997, in connection with the administration of farm loans and credit programs in violation of ECOA.[3] In connection with an assessment of these claims by the Department of Justice, we provided advice regarding various issues including the applicable statute of limitations under ECOA, whether the limitations period applies to administrative settlements, and whether the limitations period may be waived.[4] *See* ECOA Opinion, 22 Op. O.L.C. at 13. We concluded that the executive branch does not have the legal authority intentionally to waive the statute of limitations under ECOA. This conclusion was based upon the long-standing principle that, unless Congress provides otherwise, the statute of limita-

---

[1] In analyzing the issues outlined above, we shall assume familiarity with the legal and factual matters discussed in the ECOA Opinion and shall summarize only briefly the relevant background

[2] *Pigford v. Glickman*, No. Civ 1:97CV01978, 1997 WL 429426 (D.D.C. 1997).

[3] ECOA, in relevant part, prohibits any creditor from discriminating against any applicant, with respect to any aspect of a credit transaction, on the basis of race, color, religion, national origin, sex or marital status. 15 U S C § 1691(a) The statute defines a creditor to include the United States. *Id.* § 1691a(e), (f)

[4] In our earlier opinion, we concluded that the applicable statute of limitations under ECOA is two years, that the statute of limitations applies to administrative settlements, and that it may not be waived by the United States in litigation or in the compromise of claims. *See* ECOA Opinion, 22 Op. O.L.C. at 13.

tions governing a cause of action against the United States is a condition on Congress's waiver of sovereign immunity. *See id.* at 14.

We now consider in greater detail whether the Supreme Court's decision in *Irwin v. Department of Veterans Affairs*, 498 U.S. 89 (1990), and the lower court cases following *Irwin* altered or undermined this principle and thus permit the executive branch intentionally to pay claims that are time-barred under the statute of limitations prescribed by Congress. In Part I, we analyze the nature of statutes of limitations governing suits against the United States. We show that Congress has plenary and exclusive authority to impose conditions upon the waiver of sovereign immunity, and upon the executive's authority to obligate the funds of the United States, and that it has long been settled law that a statute of limitations ordinarily is such a condition. In Part II, we address the scope and effect of *Irwin* and the relevant lower court decisions. We conclude that *Irwin* made no alteration in the fundamental rules governing waivers of sovereign immunity in actions against the United States. *Irwin* and the cases following it therefore provide no support for the novel conclusion that the executive has the discretion to dispense with a congressionally mandated statute of limitations in litigation or the compromise of claims.[5] Unless Congress provides to the contrary, adherence to the relevant statute of limitations remains a strict and non-waivable condition on suits against the federal government.[6]

We understand that Congress is considering, and the administration strongly endorses, legislation that would authorize the payment of time-barred claims under ECOA. In accordance with our analysis below, the enactment of such legislation is the necessary and constitutionally appropriate means of satisfying such claims.

## I. Statutes of Limitations as a Condition on the Waiver of Sovereign Immunity

The doctrine of sovereign immunity precludes suit against the United States without the consent of Congress, and the terms of its consent define the conditions upon which such claims are permitted. *See United States v. Mottaz*, 476 U.S. 834, 841 (1986); *United States v. Mitchell*, 445 U.S. 535, 538 (1980). As Justice Holmes explained in *Reid v. United States*, 211 U.S. 529 (1909), "Suits against the United States can be maintained, of course, only by permission of the United States, and in the manner and subject to the restrictions that it may see fit to impose." *Id.* at 538; *see FHA v. Burr*, 309 U.S. 242, 244 (1940); *Munro v. United States*, 303 U.S. 36, 41 (1938). It is a cardinal rule of our system, furthermore, that the decision to waive sovereign immunity is the exclusive prerogative of Congress. *See generally OPM v. Richmond*, 496 U.S. 414 (1990); *Finn v. United*

---

[5] We thus adhere to the views we expressed earlier on the significance of *Irwin. See* ECOA Opinion, 22 Op O.L C. at 14 n.3

[6] Congress did not provide to the contrary in ECOA and the statute is subject to the general principles discussed below

*States*, 123 U.S. 227 (1887). The executive and judicial branches therefore may not, without statutory authorization, waive the conditions upon which Congress consents to suits against the government. *See id.* at 229.

Congress's exclusive authority over the terms upon which the United States may be sued is rooted in Congress's plenary authority over the appropriation of federal funds. The Appropriations Clause of the Constitution provides, "No money shall be drawn from the Treasury, but in Consequence of Appropriations made by Law." U.S. Const. art. I, § 9, cl. 7. As a consequence, no money may be paid on a claim against the government unless a statute authorizes payment or mandates compensation. *United States v. Testan*, 424 U.S. 392, 398–400 (1976); *see also Richmond*, 496 U.S. at 424. The Supreme Court has emphasized that a fundamental purpose of the Appropriations Clause is to ensure that the government's funds are spent only "according to the letter of the difficult judgments reached by Congress." *Richmond*, 496 U.S. at 428; *see Cincinnati Soap Co. v. United States*, 301 U.S. 308, 321 (1937) ("no money can be paid out of the Treasury unless it has been appropriated by an act of Congress"); *Reeside v. Walker*, 52 U.S. (11 How.) 272, 291 (1850) ("not a dollar" of the funds in the Treasury may be "used in the payment of any thing not thus previously sanctioned" by Congress). Thus, "in the absence of clear Congressional authority, the other branches of government cannot effect payment of Treasury funds." *Speers v. United States*, 38 Fed. Cl. 197, 202 (1997) (citing *Richmond*).

The Supreme Court has recognized in many contexts the constitutional principle that federal monies can be paid only in accordance with the rules Congress has prescribed. In *OPM v. Richmond*, for example, the Court rejected the argument that the government could be estopped from denying monetary benefits not otherwise permitted by statute.[7] *See Richmond*, 496 U.S. at 424–29. In *Richmond*, a retired government employee lost certain benefits because, on the basis of erroneous advice from OPM, he took a job that paid a salary that placed him outside the statutory eligibility limits for the government benefits. *Id.* at 417–18. The Court rejected the estoppel argument and enforced the statutory ineligibility requirements because to require the payment of funds in contravention of statutory terms would "render the Appropriations Clause a nullity." *Id.* at 428. "If agents of the Executive were able, by their unauthorized oral or written statements to citizens, to obligate the Treasury for the payment of funds," the Court reasoned, "the control over public funds that the [Appropriations] Clause reposes in Congress in effect could be transferred to the Executive." *Id.* The Court cautioned that estoppel would, in effect, empower executive officials to dispense with statutory requirements not to their liking, by giving legal effect to their incorrect advice. *Id.* Further, the Court observed, executive officials are not free to ignore

---

[7] The Court in *Richmond* left open the possibility that "extreme circumstances . . . might support estoppel in a case *not* involving payment from the Treasury." 496 U.S. at 434 (emphasis added). "As for monetary claims," the Court concluded, "there can be no estoppel, for courts cannot estop the Constitution." *Id.*

statutory limitations on the payment of funds and to do so knowingly is a federal crime. *Id.* at 430 (citing 31 U.S.C. §§ 1341, 1350, the Anti-Deficiency Act).

The courts and the executive branch have long acknowledged that Congress's enactment of a statute of limitations applying to suits against the United States is a condition on Congress's consent to suit. It is a "basic rule" that "[w]hen waiver legislation contains a statute of limitations, the limitations provision constitutes a condition on the waiver of sovereign immunity." *Block v. North Dakota*, 461 U.S. 273, 287 (1983); *see United States v. Dalm*, 494 U.S. 596, 608 (1990); *Mottaz*, 476 U.S. at 841; *see also* Memorandum for James W. Moorman, Assistant Attorney General, Land & Natural Resources Division, from John M. Harmon, Assistant Attorney General, Office of Legal Counsel, *Re: Pueblo of Taos v. Andrus* at 2 n.1 (Mar. 30, 1979). The imposition by Congress of a statute of limitations creates a "condition or qualification of the right to a judgment against the United States" and, unless Congress may be deemed to have "conferred authority upon any of [the government's] officers to waive the limitation imposed by statute," the limitations requirement bars judgment against the United States and may not be waived.[8] *Finn*, 123 U.S. at 232–33.

This principle has repeatedly been reaffirmed by the Supreme Court and lower courts. For example, in *Munro v. United States*, 303 U.S. 36 (1938), a United States Attorney erroneously advised a claimant that service of process would toll the statute of limitations. The claim was filed after the limitations period had run, and the Supreme Court held that the suit was time-barred. *Id.* at 41. The U.S. Attorney "had no power to waive conditions or limitations imposed by statute in respect of suits against the United States." *Id.* (citing *Finn*). *See also United States v. Garbut Oil Co.*, 302 U.S. 528, 534 (1938) (holding that an agency head was without authority to waive the requirement of the statute of limitations). To the same effect, and more recently, in *Overhauser v. United States*, 45 F.3d 1085 (7th Cir. 1995), the court refused to give effect to an agreement by which, plaintiffs asserted, the government had waived the applicable statute of limitations. Chief Judge Posner wrote that "government officers have no general power to waive statutes of limitations in tax cases" and may do so only where there is a specific statutory authorization for such a waiver. *Id.* at 1088.

The power to modify or waive a statute of limitations imposed by Congress thus is entirely a prerogative of Congress. Congress alone has the power to determine the circumstances, if any, under which a claim time-barred under the relevant statute of limitations can be paid because of equitable considerations. As the Supreme Court emphasized in the *Richmond* case, the "whole history and practice" of Congress "with respect to claims against the United States" demonstrate

---

[8] We emphasize at the outset that the issue presented here is limited to statutes of limitations involving suits against the United States In the case of non-federal defendants, a congressionally established statute of limitations is a procedural device to protect defendants and promote judicial economy It is not a condition on the waiver of sovereign immunity and, accordingly, it generally may be waived by the defendant *See, e g., Lawyers Title Ins Corp v Dearborn Title Corp.*, 118 F.3d 1157, 1166 (7th Cir. 1997).

"the impossibility" of honoring claims against the government on the basis of equity but "in violation of a statute." 496 U.S. at 430. Congress has addressed the problem of meritorious but time-barred claims in a variety of ways, but its very actions in doing so bear witness to the principle that the decision to allow claims barred by a statute of limitations is exclusively congressional. *Id.* at 430–31. For example, from time to time Congress has passed legislation specifically designed to ameliorate the harsh effects of statutes of limitations by creating exceptions or modifications to the statute.[9] Under some statutory schemes, Congress has specifically empowered an executive agency to create or modify the applicable limitations period and thus to authorize its waiver in individual cases.[10] More generally, Congress has created the "congressional reference" procedure, 28 U.S.C. §§ 1492, 2509 (1994), which permits the consideration of the equities of time-barred claims, with Congress retaining the ultimate decision as to payment[11] and circumstances in which the statute of limitations can be disregarded.[12]

Thus, the long-established axiom is that Congress controls the waiver of sovereign immunity. Unless it authorizes another branch to ignore or modify the conditions upon which it waives that immunity, only Congress may establish or modify the terms under which the funds of the United States are to be obligated.

---

[9] *See, e.g.,* Omnibus Budget Reconciliation Act of 1989, Pub. L. No 101–239, § 10302, 103 Stat 2106, 2481 (authorizing agency to waive statute of limitations where a claimant's untimely filing was caused by incorrect advice from the agency), Priv. L No 99–3, 100 Stat 4314 (1986) (waiving statutory deadline for particular claimant where claimant's petition was untimely due to misinformation from the agency), Legislative Branch Appropriations Act, 1993, Pub L No 102–392, 106 Stat 1703 (1992) (extending statute of limitations for suits for bodily injury and death under Migrant and Seasonal Workers Protection Act); Pub. L No 103–104, 107 Stat. 1025 (1993) (waiving applicable statute of limitations for takings cases arising out of creation of new national recreation area).

[10] *See, e g,* 42 U.S.C § 405(g) (1994) (claimant must seek judicial review within 60 days "or within such further time" as the agency may provide), 26 U.S.C. § 6532(a)(2) (1994) (statute of limitations may be extended for such time as agreed upon in writing by the agency and the claimant), *see BCS Financial Corp. v. United States,* 118 F.3d 522, 525 (7th Cir 1997) (when Congress has empowered an agency to create or modify the time limitations without further congressional action, "its application to a particular case can be waived" by the agency by virtue of its statutory authority)

[11] A congressional reference advises Congress whether, based on equitable considerations, a claim should be paid notwithstanding, inter alia, the "bar of any statute of limitation " 28 U.S.C. § 2509(c); *Menominee Indian Tribe of Wisconsin v. United States,* 39 Fed Cl 441, 456–57 (1997); *see also Banfi Products Corp v United States,* 40 Fed Cl 107 (1997); *Bear Claw Tribe Inc v. United States,* 37 Fed. Cl. 633 (1997). Under congressional reference procedures, either House of Congress may, by passage of a bill, refer a claim against the United States to the Court of Federal Claims. 28 U S C § 1492. A judge of the Court of Federal Claims, acting as a "hearing officer," makes an initial determination whether a claimant's demand is a "legal or equitable claim" or merely a "gratuity," and recommends the amount, if any, that is legally or equitably due the claimant 28 U S C. § 2509(c). The report and recommendation of the hearing officer is then reevaluated by a three-judge review panel of the court, before the report and recommendation is sent to Congress *Id* § 2509(d). A claim is not paid until Congress specifically appropriates the award by statute *See generally* Subcommittee on Immigration and Claims of the House Comm on the Judiciary, 105th Cong , *Rules of Procedure for Private Claims Bills* (Comm Print 1997), *see, e g ,* Departments of Commerce, Justice, and State, the Judiciary, and Related Agencies Appropriations Act, 1998, Pub. L No 105–119, § 114, 111 Stat. 2440, 2461 (1997) (appropriating funds for award recommended in *Estate of Braude v. United States,* 35 Fed Cl 99 (1996), *approved by review panel,* 38 Fed Cl. 476 (1997)).

[12] We have examined the statutory language of ECOA to determine whether the statute confers upon the Executive any discretion to waive the statute of limitations requirement We find nothing in ECOA to suggest that Congress has done so. Where Congress has conferred such authority, it has done so by affirmatively delegating some manner of discretion over the statute of limitations *See, e g ,* 42 U S C. § 405(g) (claimant must seek judicial review within 60 days "or within such further time" as the agency may provide), 26 U.S.C. § 6532(a)(2) (statute of limitations may be extended for such time as agreed upon in writing by the agency and the claimant). Here, the statute is silent. Accordingly, the general prohibition on the waiver of a statute of limitations is applicable to ECOA.

For the executive branch to assert a general authority intentionally to waive stat-
utes of limitations would represent a fundamental and far-reaching departure from
constitutional principles previously recognized by all three branches of the govern-
ment. To allow the executive to enlarge, in its discretion, a congressional waiver
of sovereign immunity and to obligate the funds of the United States without
statutory authorization would effect a significant alteration in the constitutional
separation of powers, as traditionally understood, in an area of undisputed legisla-
tive primacy. It would be implausible to read a Supreme Court decision to cause
such a seismic shift in our system of government unless the Court expressed a
clear intention to do so.

We turn now to consider whether the Supreme Court's decision in *Irwin*
wrought a fundamental change in the long-standing principles we have discussed.

## II. The Scope and Effect of *Irwin*

### A. The Supreme Court's Decision

In *Irwin v. Department of Veterans Affairs*, the Court held that a statute of
limitations in a suit against the United States is presumed to be subject to the
doctrine of equitable tolling. 498 U.S. at 96. The Court addressed the issue in
the context of a late-filed Title VII action against the government. *Id.* at 91. At
issue was whether "late-filed claims are jurisdictionally barred." *Id.* at 92. The
Court's preliminary conclusion that the claim at issue "did not strictly comply"
with the filing deadline, did not "end [its] inquiry." *Id.* at 93. Rather, the Court
addressed whether a late-filed claim may be deemed to have satisfied the statute
of limitations based upon the doctrine of equitable tolling.[13] *Id.*

The Court began its analysis by observing that in the context of a suit against
the government, the Title VII statute of limitations "is a condition to the waiver
of sovereign immunity and thus must be strictly construed." *Id.* at 94 (citation
omitted). However, the Court noted the customary availability of equitable tolling
in suits between private litigants,[14] and reasoned that:

> [M]aking the rule of equitable tolling applicable to suits against
> the Government . . . amounts to little, if any broadening of the
> congressional waiver. Such a principle is likely to be a realistic

---

[13] Equitable tolling principles would allow a late-filed claim to be heard where "the claimant has actively pursued
his judicial remedies by filing a defective pleading during the statutory period, or where the complainant has been
induced or tricked by his adversary's misconduct into allowing the filing deadline to pass." *Irwin*, 498 U S. at
96 (footnotes omitted), *see* ECOA Opinion, 22 Op O L.C. at 23–26 (addressing equitable tolling principles generally
and applying the doctrine to claims of alleged discrimination by USDA)

[14] The relevance of this point presumably is that Congress's toleration of the courts' practice of applying equitable
tolling in these suits without any express statutory authorization is evidence that Congress regards the courts' practice
as consistent with Congress's intentions in enacting statutes of limitations in the context of suits between private
litigants.

> assessment of legislative intent as well as a practically useful prin-
> ciple of interpretation.

*Id.* at 95. The Court therefore adopted as a "general rule" a "rebuttable presump-
tion" that the doctrine of equitable tolling can be applied to suits against the
United States. *Id.*

*Irwin* does not assert any intention on the Court's part to make a fundamental
modification in the principles governing waivers of sovereign immunity. Further-
more, the Court's reasoning is most naturally read as a reconfirmation of those
principles. The opinion of the Court explicitly reiterated the long-standing view
that statutes of limitations are congressionally imposed conditions on Congress's
waiver of sovereign immunity. The considerations the Court adduced in adopting
a presumption that equitable tolling applies—Congress's likely intentions and the
*de minimis* effect the availability of equitable tolling would have on the scope
of Congress's waiver of immunity—are relevant under the traditional under-
standing of Congress's plenary authority in this area. Precisely because Congress's
authority is complete, its intentions are controlling and the Court should adopt
the approach most likely to effectuate those intentions, including a likely intention
to permit courts to deem the statute of limitations satisfied, here as elsewhere,
by claimants who meet the rigorous standards of equitable tolling.[15] There is no
obvious justification for interpreting *Irwin* as anything other than the application
of settled principles to resolve a particular issue on which earlier cases were
ambiguous.

We have considered, however, the possibility that *Irwin* so altered the legal
principles governing this area that the Executive can waive a statute of limitations
on the basis of equitable considerations alone. In support of this conclusion, a
"waiver argument" might be fashioned as follows: prior to *Irwin*, it was assumed
that the Constitution required the executive and judicial branches to respect stat-
utes of limitations as absolute bars on late-filed claims against the United States;
rigid maintenance of the limitations periods Congress prescribed was a necessary
corollary of recognizing Congress's exclusive authority over the waiver of sov-
ereign immunity. But *Irwin* may be read as demonstrating that the judicial branch
is not absolutely bound by a congressionally prescribed limitations period in cir-
cumstances where an untimely claim deserves recompense on equitable grounds.
Thus, the waiver argument would conclude, if courts are not bound absolutely
by a limitations period, there is no reason that the executive branch does not
have a similar discretion that would allow it to modify or waive a statute of limita-
tions where, in the executive's determination, there are compelling equitable rea-
sons for doing so.

---

[15] An improperly narrow construction of Congress's waiver of sovereign immunity, like an unauthorized judicial
expansion of the waiver, would be a usurpation of Congress's prerogative *See Irwin*, 498 U.S. at 94 (the Court
is obliged "not to 'assume the authority to narrow the waiver that Congress intended,' or construe the waiver 'unduly
restrictively' '') (citation omitted)

We do not find this interpretation of *Irwin* tenable. First, the waiver argument ignores *Irwin*'s pointed restatement of the traditional view that "the time limits imposed by Congress in a suit against the Government involve a waiver of sovereign immunity" and that Congress's imposition of a limitations period is "a condition to the waiver of sovereign immunity." 498 U.S. at 96, 94. A mere procedural requirement that can be dispensed with by another branch of government scarcely could be called a *condition* to recovering a money claim from the United States, and it would "involve" Congress's waiver of sovereign immunity only in the most trivial sense. Under the Court's reasoning, if a claimant satisfies a statute of limitations by virtue of equitable tolling, the statutory condition precedent has been met and the consent of Congress has been given. The opinion does not suggest that the statute of limitations is no longer a condition precedent, only that the condition may be satisfied by application of equitable tolling.

Second, the waiver argument ignores the reasons the Court gave in *Irwin* for adopting a rebuttable presumption that equitable tolling is available. The Court observed that its decision would "amount[ ] to little, if any, broadening of the congressional waiver" of sovereign immunity, and concluded that the presumption was consistent with Congress's intent in waiving sovereign immunity and subjecting the government to claims available against private parties. *Id.* at 95. In contrast, the conclusion that the executive may waive statutes of limitations would apparently vest the executive with full discretion to pay otherwise time-barred claims at its choosing, surely a quite substantial "broadening of the congressional waiver." No limiting principles parallel to those governing equitable tolling exist to guide the Executive's exercise of this discretion, and even if the Attorney General were to evolve such principles one could not impute to Congress the intent of permitting the Executive to act on them, at least with respect to statutes of limitations enacted in ignorance of their existence and content. Finally, in order to read *Irwin* as licensing executive waiver of limitations statutes we would have to reject the most natural reading of the decision in favor of an interpretation that attributes to the Court the intention of reworking long-standing and fundamental principles in an opinion that provides no indication of such an intention. We conclude that *Irwin* by itself provides no support for the waiver argument.

### B. Post-*Irwin* Cases

*Irwin* has been the subject of extensive and sometimes inconsistent lower court interpretation since it was decided. We have considered, therefore, the possibility that post-*Irwin* caselaw extends the scope or meaning of the decision far enough to encompass executive waiver of statutes of limitations. We begin by noting that the Supreme Court's own cases before and after *Irwin* are entirely free of any indication that *Irwin* marked a departure from its well-established jurisprudence regarding sovereign immunity. Only months before issuing its decision in *Irwin*,

the Court reaffirmed that statutes of limitations are mandatory conditions upon Congress's consent to suit, *United States v. Dalm*, 494 U.S. 596, 608 (1990), a proposition that *Irwin* itself reiterates. 496 U.S. at 94. Following *Irwin*, in *United States v. Williams*, the Court once again emphasized that a waiver of sovereign immunity may not be enlarged "beyond the purview of the statutory language," 514 U.S. 527, 531 (1995) (citation omitted), language that is difficult to reconcile with the waiver argument reading of *Irwin*.[16] The Supreme Court has to date given no indication that it views *Irwin* as a landmark decision on the constitutional separation of powers.

The vast majority of lower court decisions following *Irwin* clearly reaffirm the rule that the government may not waive statutes of limitations. Many decisions, indeed, reaffirm this basic principle without addressing the argument that *Irwin* might have changed it,[17] a fact that supports our conclusion that nothing in *Irwin* itself provides a basis for arguing that the executive now possesses a generalized waiver authority. Among the cases that actually discuss the significance of *Irwin*, some courts have concluded that *Irwin* did not alter the rule that statutes of limitations are a strict condition on the waiver of sovereign immunity in suits against the United States.[18] These cases obviously support the conclusion that *Irwin* did not fundamentally rewrite the law governing this area.

Some courts, in cases involving a claim that equitable tolling should be applied, have stated that because statutes of limitations under *Irwin* are generally subject to equitable tolling they are not "jurisdictional" in nature, as was assumed before

---

[16] Even with regard to *Irwin*'s treatment of equitable tolling, the Supreme Court has recently held that the doctrine does not apply in every case and to every statute of limitations, but depends upon "the text of the relevant statute." *United States v Beggerly*, 524 U S 38, 48 (1998). Indeed, the Court's decision in *Beggerly* further supports our understanding that *Irwin* simply permits the application of equitable tolling to suits against the government under certain circumstances and where consistent with the specific statute in question *Id*

[17] *See, e g , Flory v. United States*, 138 F 3d 157, 159 (5th Cir 1998), *Millares Guiraldes de Tineo v United States*, 137 F 3d 715, 719–20 (2d Cir 1998); *Loudner v United States*, 108 F.3d 896, 900 (8th Cir. 1997), *Brown Park Estates-Fairfield Dev. Co. v. United States*, 127 F.3d 1449, 1454 (Fed Cir 1997), *Dahn v United States*, 127 F 3d 1249, 1252 (10th Cir 1997), *Nesovic v United States*, 71 F.3d 776, 777–78 (9th Cir 1995), *Widdoss v. Secretary of HHS*, 989 F 2d 1170, 1172 (Fed Cir ), *cert denied*, 510 U S 944 (1993), *Richmond, Fredericksburg & Potomac R R. v. United States*, 945 F.2d 765, 769 (4th Cir. 1991), *Hart v United States*, 910 F.2d 815, 818–19 (Fed Cir 1990); *Levy v GAO*, No 97 CIV 4016 (MBM), 1998 WL 193191, at *1, 3 (S D.N Y Apr 22, 1998); *Wrona v United States*, 40 Fed. Cl 784, 787 (1998), *Alder Terrace Inc v United States*, 39 Fed Cl. 114 (1997), *aff'd*, 161 F 3d 1372 (Fed Cir 1998), *Entines v United States*, 39 Fed Cl 673, 678 (1997), *Campbell v United States*, 38 Fed Cl 524, 527, *aff'd*, 132 F 3d 53 (1997), *cert denied*, 523 U S 1078 (1998), *McDonald v United States*, 37 Fed. Cl 110, 113 (1997), *aff'd*, 135 F 3d 778 (1998), *RTC v Miramon*, 935 F Supp 838, 841 (E D. La 1996), *Catellus Dev Corp v United States*, 31 Fed Cl. 399, 404 (1994), *Mason v. United States*, 27 Fed Cl. 832, 836 (1993), *Laughlin v United States*, 22 Cl Ct 85, 99 (1990), *aff'd mem*, 975 F 2d 869 (Fed Cir. 1992)

[18] *See, e g., RHI Holdings, Inc v United States*. 142 F 3d 1459, 1461–63 (Fed Cir 1998), *Lawyers Title Ins. Corp. v. Dearborn Title Corp.*, 118 F.3d 1157, 1166 (7th Cir 1997), *Bath Iron Works Corp v United States*, 20 F 3d 1567, 1572 n.2 (Fed Cir 1994), *Vintilla v United States*, 931 F 2d 1444, 1446 (11th Cir 1991), *Scott v Reno*, No 97 Civ 5203 (RPP), 1998 WL 249178, at *3 (S D N.Y May 18, 1998), *Dillard v Runyon*, 928 F Supp. 1316, 1324 (S D N Y 1996), *aff'd*, 108 F 3d 1369, 1373–74 (2d Cir 1997), *Her v Secretary of HHS*, 33 Fed Cl 542, 544 (1995), *cf Calhoun County v United States*, 132 F 3d 1100, 1104 (5th Cir 1998) (*Irwin* reinterpreted the intent behind congressional waivers of sovereign immunity but did not alter the nature of the conditions of that waiver)

*Irwin.*[19] The question whether *Irwin* modified the jurisdictional nature of limitations provisions has various implications for federal court practice and procedure; for example, if a statute of limitations applicable to a suit against the government is no longer deemed jurisdictional, failure to comply with it is presumably "merely an affirmative defense which the [government] has the burden of establishing." [20] But the proper resolution of this debate over the effect of *Irwin* on the jurisdiction of the federal district courts is irrelevant to the question addressed here.

The conclusion that a statute of limitations is not a limitation on a court's jurisdiction does not in any way imply that the executive branch can intentionally waive compliance with the statute. The two concepts are not the same.[21] A court does not lack jurisdiction merely because the plaintiff fails to satisfy a condition precedent to obtaining judgment in its favor. *See Bell v. Hood,* 327 U.S. 678, 683 (1946). By the same token, the fact that a court has jurisdiction in no way implies that Congress has not imposed a condition precedent on the plaintiff's ability to obtain a judgment.

The Supreme Court recognized the latter point long ago in a case involving compliance with a statute of limitations in a suit against the government. "As the United States are not liable to be sued, except with their consent, it was competent for Congress to limit their liability, in that respect, to specified causes of action, brought within a prescribed period." *Finn,* 123 U.S. at 232, *citing Nichols v. United States,* 74 U.S. (7 Wall.) 122, 126 (1868). The Court concluded that the pending claim, "although by reason of its character 'cognizable by the [court],' cannot properly be made the basis of a judgment in that court" because it was barred by the statute of limitations. *Id.* at 231–32. The creation of a statute of limitations "makes it a condition or qualification of the right to a judgment

---

[19] *See, e g., Fadem v. United States,* 52 F.3d 202, 206 (9th Cir 1995); *Glarner v Department of Veterans Administration,* 30 F 3d 697, 701–02 (6th Cir 1994); *Washington v Garrett,* 10 F.3d 1421, 1437 (9th Cir 1993); *Ynclan v Department of the Air Force,* 943 F.2d 1388, 1391 (5th Cir 1991), *see also Becton v Pena,* 946 F. Supp 84, 86–87 (D D C. 1996) (questioning whether, after *Irwin,* statutes of limitation are jurisdictional).

[20] *Schmidt v. United States,* 933 F.2d 639, 640 (8th Cir 1991) (citing Fed. R. Civ. P 12(b)(1)). The *Schmidt* court noted other consequences that may follow from treating statutes of limitations as non-jurisdictional: the government should present the issue through a Rule 56 motion for summary judgment (or, presumably, a Rule 12(b)(6) motion for failure to state a claim) rather than under Rule 12(b)(1) (asserting a jurisdictional defect), and the court should view the facts concerning compliance with the statute in the light most favorable to the claimant *Id.* at 640, *Slaaten v United States,* 990 F 2d 1038, 1043 n.5 (8th Cir 1993) (citing *Schmidt*), *but see Loudner v United States,* 108 F.3d 896, 900 n 1 (8th Cir. 1997) (statutes of limitations are conditions precedent to the waiver of sovereign immunity and "failure to sue within the period of limitations is not simply a waivable defense, it deprives the court of jurisdiction to entertain the action").

[21] The assumption that if statutes of limitations are not "jurisdictional," they are therefore waivable rests on a misinterpretation of the many meanings that are ascribed to the term. *See Kanar v United States,* 118 F 3d 527, 529–30 (7th Cir 1997). The term "jurisdiction" is a short-hand that is used to refer to many things, including the subject matter jurisdiction of a court and whether a claim is one for which relief can be granted. *See, e.g., Bell v. Hood,* 327 U S. 678, 682 (1946), *Kanar,* 118 F 3d at 529–30, *Spruill v. Merit Systems Protection Bd.,* 978 F.2d 679, 687–88 (Fed Cir. 1992); *see also Carlisle v United States,* 517 U S. 416, 434–35 (1996) (Ginsburg, Souter, Breyer, JJ., concurring) (observing the many meanings, uses and misuses of the term "jurisdiction") Here, we are concerned with statutes of limitations only insofar as they constitute a condition precedent to the assertion of a valid claim for which relief can be granted.

against the United States." [22] *Id.* at 232. As *Finn* clearly states, regardless of whether a federal court has jurisdiction over a claim against the government, Congress's imposition of a statute of limitations creates a condition precedent that a plaintiff must satisfy in order to establish a claim against the United States for which relief can be granted. If a claimant has not satisfied this statutory condition precedent, sovereign immunity has not been waived.

Several of the cases discussing *Irwin* have specifically considered whether *Irwin* makes a statute of limitations in a suit against the United States subject to waiver and have concluded that the statute of limitations is not waivable. [23] These decisions clearly rest on the proposition that because a statute of limitations is one of the conditions that Congress placed on its consent to be sued, the executive branch has no authority, through waiver of the statute of limitations, to usurp the congressional prerogative to determine when the United States may be sued. As one court observed, "Tolling is not the same as waiving. Presumably, therefore, *Irwin* merely holds that those time limits, while jurisdictional, can be equitably tolled in certain circumstances." *Bath Iron Works Corp. v. United States,* 20 F.3d 1567, 1572 n.2 (Fed. Cir. 1994).

Nothing in *Irwin* suggests that statutes of limitations are anything other than a term upon which the government consents to be sued. Whether some courts interpret *Irwin* to suggest that statutes of limitations are non-jurisdictional, does not provide authority for the conclusion that they are waivable. Thus, the vast majority of lower court cases decided since *Irwin* support or, at a minimum, are fully in accord with the traditional view that statutes of limitations that condition Congress's consent to suit are not waivable. The debate over *Irwin's* implications for federal court jurisdiction in no way undermines this weight of authority. *See supra* notes 16–17 (collecting cases).

There are two post-*Irwin* cases, involving statutes of limitations that are conditions on the waiver of sovereign immunity, [24] that hold that the government's failure to plead a statute of limitations defense in its answer may result in the loss of the defense. *See Harris v. Secretary of Veterans Affairs,* 126 F.3d 339 (D.C. Cir. 1997); *Cedars-Sinai Medical Ctr. v. Shalala,* 125 F.3d 765, 770 (9th

---

[22] *Finn* also stated that it was the "duty" of a court to dismiss an untimely claim against the government regardless of "whether limitation was pleaded or not " 123 U.S at 232

[23] *Lawyers Title Ins Corp.,* 118 F 3d at 1166; *Alder Terrace, Inc ,* 39 Fed Cl at 120, *Her,* 33 Fed. Cl. at 544; *McDonald,* 37 Fed Cl at 113, *RTC v Miramon,* 935 F. Supp at 841; *cf. BCS Financial Corp.,* 118 F.3d at 525 (statute of limitations may be waived where it is not congressional prerequisite to suit and agency is statutorily authorized to waive the limitations period)

[24] As we noted above, *supra* at note 10 and accompanying text, limitations periods over which Congress has vested an executive agency with discretion are not conditions on Congress's waiver of sovereign immunity The cases that hold that the government's failure timely to plead such a statute of limitations as an affirmative defense resulted in forfeiture of the defense are therefore irrelevant to the question we address in this part of our memorandum *See, e g , Bowden v. United States,* 106 F.3d 433, 437 (D C. Cir 1997), *Johnson v Sullivan,* 922 F 2d 346, 355 (7th Cir 1990), *Weinberger v Salfi,* 422 U.S 749, 763 (1975)

Cir. 1997).[25] In *Harris*, a panel of the D.C. Circuit concluded that a statute of limitations may be forfeited under the Federal Rules of Civil Procedure. 126 F.3d at 343–44. The court rested its decision on pre-*Irwin* circuit precedent, *see Mondy v. Secretary of the Army*, 845 F.2d 1051 (D.C. Cir. 1988), and reasoned that the plain meaning of Federal Rule of Civil Procedure 8(c) and the Rule's underlying policy of fair notice require the government to plead the defense or risk "forfeiture" of the defense. 126 F.3d at 343, 346.

*Harris* did not cite the Supreme Court's *Irwin* decision, nor did it address the doctrine of sovereign immunity and the constitutional principles that determine when and by whom immunity is waived. Because it fails to address long-standing sovereign immunity doctrine, *Harris* casts little light on the scope of that doctrine today. In addition, because *Harris* neither relies upon nor addresses *Irwin*, *Harris* cannot be read for the proposition that *Irwin* reversed long-standing Supreme Court caselaw concerning statutes of limitations. Even on the assumption that *Harris* was correctly decided, its conclusion that a procedural default by the government might entitle a time-barred plaintiff to avoid the effect of a statute of limitations provides no support for the proposition that the government may intentionally waive the statute of limitations. *Harris* is a case about the executive's obligations under the Rules of Civil Procedure, not about its discretion to disregard the limitations Congress has placed on the payment of federal funds.

In *Cedars-Sinai*, a panel of the Ninth Circuit considered a fact pattern similar to that at issue in *Harris*: the government had failed to plead the statute of limitations or indeed to mention it until it filed a reply memorandum in support of its motion to dismiss the action. 125 F.3d at 770. In reaching the same conclusion as the *Harris* court, that the government's failure to plead the defense could enable a late-filing claimant to evade the time bar of the statute, *Cedars-Sinai* cited *Irwin* for the proposition that statutes of limitations are not "jurisdictional," and on that basis asserted that "the statute of limitations may be waived by the" government. *Id.* at 770–71. The court briefly explained that "where the language of a statute of limitations does not speak of jurisdiction, but erects only a procedural bar, the Supreme Court has stated that recognition of traditional exceptions such as equitable tolling, waiver, and estoppel does little to broaden the congressional waiver of sovereign immunity." *Id.* at 770 (citing *Irwin*, 498 U.S. at 95).

*Cedars-Sinai* does indeed speak in terms of executive "waiver" of a statute of limitations, but we do not believe that it provides a proper basis for concluding that the executive may intentionally dispense with a congressionally prescribed limitations provision. As a preliminary matter, we note that the case did not concern or even address an attempt by the executive to permit a late-filing claimant

---

[25] The holdings in *Harris* and *Cedars-Sinai* are in tension with Supreme Court precedent in *United States v Sherwood*, 312 U S 584 (1941), the Court held that the government's consent to suit is limited by statute and that Congress's consent may not be affected by, nor enlarged by, the Federal Rules of Civil Procedure. *Id.* at 589–90 In discussing the cases' relevance to the question we are considering we do not mean to imply that they are correct.

to avoid the bar of the statute of limitations. Indeed, in *Cedars-Sinai*, the executive was vigorously asserting that the claimant was time-barred, and the precise question before the court was whether the government had raised the question too late. More importantly, the court's rationale is unpersuasive as applied to intentional waiver. As we have already discussed, it is incorrect to assume that the executive is free to waive the application of a statute of limitations because the statute is not jurisdictional for purposes of federal court practice and procedure. Furthermore, the *Cedars-Sinai* court's paraphrase of the Supreme Court's reasoning in *Irwin* significantly misstates what the Supreme Court actually said: *Irwin* did not rest the presumption that equitable tolling is available on whether the statute of limitations "speak[s] of jurisdiction," nor did it describe a statute of limitations that does not mention jurisdiction as "only a procedural bar," or state that recognizing "traditional exceptions such as . . . waiver, and estoppel does little to broaden the congressional waiver." *Compare Cedars-Sinai*, 125 F.3d at 770, *with Irwin*, 498 U.S. at 95.

Given the absence of any discussion of *Irwin* in *Harris* and the questionable treatment of *Irwin* in *Cedars-Sinai*, neither case leads us to conclude that *Irwin* altered the long-standing principle that the executive branch lacks an independent authority to waive a statute of limitations that is a condition on bringing suit against the United States. Even accepting the holdings of both cases, neither *Harris* nor *Cedars-Sinai* actually involved or addressed the power of the executive branch intentionally to waive the statute of limitations in order to benefit a meritorious but time-barred claimant. Thus, upon review of *Irwin* and subsequent caselaw, we find no basis on which to conclude that the executive intentionally may waive a statute of limitations that is a "condition or qualification of the right to a judgment against the United States," where Congress has vested the executive with no authority over the condition. *Finn*, 123 U.S. at 232.

### III. Conclusion

We find no basis that would permit us to conclude that the Attorney General possesses a general authority to waive statutes of limitations or that ECOA itself confers specific authority to do so. The statute of limitations in ECOA is a condition to Congress's consent to suit against the government and the Executive therefore has no power to pay time-barred claims as if they were fully valid. To do so would be to usurp Congress's authority over the waiver of sovereign immunity and Congress's power to determine under what conditions the funds of the United States shall be obligated. *See, e.g., Richmond*, 496 U.S. at 428; *Finn*, 123 U.S. at 232–33.

We observe in this context that the Attorney General's broad litigation and settlement authority clearly permits her to compromise claims on the basis of her good faith assessment of the litigation risk that a court might find that claimants

satisfied the statute of limitations through equitable tolling and that their claims merited relief. *See The Attorney General's Role as Chief Litigator for the United States*, 6 Op. O.L.C. 47, 60 (1982). Her determination whether to compromise the claims on the basis of the litigation risk may be guided by her judgment that compromise, rather than litigation, would be in the best interests of the United States or would otherwise promote the ends of justice. *Id.* But her settlement authority does not allow her to discard a statutory requirement and determine that, on the basis of her own view of the equities, a claim should be paid, notwithstanding its legal invalidity. Rather, the Attorney General's obligation "to administer and enforce the Constitution of the United States and the will of Congress as expressed in the public laws," requires that she enforce statutes of limitations where they bar a plaintiff's claims. *See id.* at 62.

DAWN E. JOHNSEN
*Acting Assistant Attorney General*
*Office of Legal Counsel*